```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 19, 2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA ex rel.
MATTHEW CESTRA, and on behalf of the
STATES of CALIFORNIA, COLORADO,
CONNECTICUT, DELAWARE, FLORIDA,
GEORGIA, HAWAII, ILLINOIS,
INDIANA, IOWA, LOUISIANA,
MARYLAND, the COMMONWEALTH OF
MASSACHUSETTS, MICHIGAN,
MINNESOTA, MONTANA, NEVADA,
NEW JERSEY, NEW MEXICO, NEW
YORK, NORTH CAROLINA,
OKLAHOMA, RHODE ISLAND,
TENNESSEE, TEXAS, the
COMMONWEALTH OF VIRGINIA,
WASHINGTON, WISCONSIN and the
DISTRICT OF COLUMBIA,

                Plaintiffs,

    -against-

CEPHALON, INC. and JOHN DOES # 1-
100, FICTITIOUS NAMES,

                Defendants.

10 Civ. 6457 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

    When relator Matthew Cestra filed this *qui tam* action on August 30, 2010, a substantively similar action had already been pending in the U.S. District Court for the Eastern District of Pennsylvania. Yet the complaint in the Eastern District of Pennsylvania remained under seal until September 12, 2013, keeping that action hidden from the public's—and Cestra's— view. Upon the unsealing of the Eastern District complaint and Cestra's learning of its existence, Cestra moved to transfer this action to the Eastern

District of Pennsylvania. Cestra bases his motion on the "first-filed" rule, which presumes that where two lawsuits are "competing lawsuits," *N.Y. Marine & Gen. Ins. Co. v. LaFarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)), the later-filed action should be transferred to the district where the earlier-filed action is pending.

Because the above-captioned action overlaps substantially with the first-filed Eastern District of Pennsylvania action, this Court agrees with Cestra that the first-filed rule establishes a presumption in favor of transfer. There are no special circumstances present to rebut that presumption, and the Court views the Eastern District of Pennsylvania as an eminently convenient forum for the litigation of this action. The Court therefore grants Cestra's motion to transfer.

## I. BACKGROUND

### A. This Litigation by Cestra

On August 30, 2010, Cestra filed this action pursuant to the *qui tam* provisions of the Federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, and analogous state laws. Since that time, he has filed a First Amended Complaint as well as a Second Amended Complaint, and the United States has declined to intervene in the action. (*See* Dkt. Nos. 19, 33.)

Cestra alleges that Cephalon illegally promoted two of the drugs it sells: the opioid Fentora (*see* Corrected Second Am. Compl., Dkt. No. 45 ("Cestra SAC" or "SAC") ¶ 261) and the chemotherapy drug Treanda (*see id.* ¶ 3). According to Cestra, Cephalon promoted Fentora and Treanda "off-label"—that is, for uses not approved by the FDA. (*Id.* ¶¶ 57-58, 378-379.) He alleges that this promotion led to false claims to the government, because off-label treatments are ineligible for reimbursement under federal and state health care programs. (*Id.*)

2

In regard to Fentora, Cestra explains that the drug is such a potent pain reliever—and is so susceptible to abuse "even relative to other opioids"—that the FDA has approved it only for breakthrough cancer pain, meaning extreme spikes in cancer-related pain that ordinary pain treatments cannot control. (*Id.* ¶¶ 8, 261.) Yet, Cestra alleges, instead of marketing Fentora to the doctors who treat breakthrough cancer pain, Cephalon opted instead to improperly market Fentora to physicians who treat principally non-cancer pain. (*Id.* ¶¶ 314-316.) Cestra claims that this marketing strategy purposefully promoted Fentora's off-label use. (*Id.* ¶ 317.)

As for Treanda, Cestra states that the FDA approved the drug only for specific cancer treatment, namely as a second-line[1] treatment for patients with indolent non-Hodgkin lymphoma. (*Id.* ¶¶ 3-4.) Nonetheless, alleges Cestra, Cephalon induced physicians improperly to prescribe Treanda as a front-line treatment. (*E.g., id.* ¶¶ 4-6, 81-114.) Cestra alleges two methods by which Cephalon promoted Treanda for front-line use: first, by misrepresenting Treanda's effectiveness (*e.g., id.* ¶ 115), and second, by providing "kickbacks to induce prescribing of Treanda" (*e.g., id.* at 64).

### B. The Eastern District of Pennsylvania Litigation by Boise

On January 3, 2008, more than two-and-one-half years before Cestra filed his complaint in the Southern District of New York, Bruce Boise filed a complaint under seal in the Eastern District of Pennsylvania, entitled *United States et al.* ex rel. *Boise v. Cephalon, Inc., et al.*, No. 08-287. Boise subsequently filed an amended complaint (*see* Simmer Decl. Exh. B, Sept. 12, 2013 ("Boise AC")) and, in 2013, the United States declined to intervene in the Boise action (*see* Simmer Decl. Exh. A at 4, Sept. 12, 2013). Having

---

[1] Anti-cancer drugs used in the initial treatment of a disease are called "front-line" drugs, while "second-line" drugs (such as Treanda) treat cancers that continue to progress even after treatment with a front-line regimen. (*See* SAC ¶ 3.)

been hidden from the public view due to the seal, the action was unsealed on September 12, 2013. (*See id.* at 4-5.)

That action was brought against two defendants: Cephalon, Inc., and Tekada Pharmaceuticals North America, Inc. (*See* Boise AC ¶¶ 11-12.) It alleges that off-label promotion of four drugs—including Fentora but not including Treanda—resulted in false claims to federal and state health care reimbursement programs. (*Id.* ¶ 4.) According to that complaint, Cephalon marketed Fentora toward doctors who predominantly treat non-cancer pain, in an effort to promote Fentora for off-label pain treatment. (*Id.* ¶¶ 83-84.) Contending that this off-label promotion led to false claims to federal and state health care reimbursement programs, Boise alleges causes of action under the *qui tam* provisions of the FCA and various states' analogous laws. (*Id.* ¶¶ 27, 31, 34, 265.)

### C. The Motion to Transfer

On the same day as the Boise action was unsealed, Cestra moved to transfer this action to the Eastern District of Pennsylvania "so that it may be adjudicated in the same court in which an earlier filed case alleging similar fraud by the same defendant, and involving one of the two drugs at issue, already is pending." (Mem. in Support of Pf./Relator's Mot. to Transfer, Dkt. No. 65 ("Cestra Mem.") at 1.) Cestra contends that the first-filed rule requires transfer, because this action is substantially similar to the earlier-filed Boise action.[2]

---

[2] Fifteen days after the Boise action was unsealed, Cephalon moved to dismiss the Fentora claims in this action for lack of subject matter jurisdiction on the grounds that the FCA provides that "no person other than the Government may intervene or bring a related action based on the facts underlying the present action," 31 U.S.C. § 3730(b)(5), and that this action is "based on the facts underlying the present [*i.e.*, the Boise] action" insofar as the Fentora claims are concerned. (*See* Dkt. No. 69.)

4

## II. THE FIRST-FILED RULE

The first-filed rule, a construct solely of case law, dictates that "in determining the proper venue, where there are two competing lawsuits, the first suit should have priority." *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112 (quoting *Gottdiener*, 462 F.3d at 106) (internal quotation marks and alterations omitted). This rule reflects a "well-settled principle" and serves "considerations of administration and conservation of resources." *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79-80 (2d Cir. 1989).

In deciding whether the first-filed rule applies, the central question is whether "there are two competing lawsuits." *See N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112. Lawsuits compete where "the prior action concerned the same parties and involved the same general dispute." *Gyadu v. Hartford Ins. Co.*, No. 97-7720, 1998 WL 30470, at *2 (2d Cir. Jan. 28, 1998). Although the case law of the U.S. Court of Appeals for the Second Circuit does not further define "competing lawsuits," the district courts in the Second Circuit are largely in consensus that although competing lawsuits need not be identical, they must have "sufficient overlapping factual and legal issues." *MasterCard Int'l, Inc. v. Lexcel Solutions, Inc.*, No. 03 Civ. 7157, 2004 WL 1368299, at *8 (S.D.N.Y. June 16, 2004); *see also, e.g., Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012) ("Application of the rule requires that both cases have identical or substantially similar parties and claims."); *Am. Steamship Owners Mut. Protection & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 481 (S.D.N.Y. 2007) ("This principle requires a substantial overlap between the cases, in that they have identical or substantially similar parties and claims." (internal quotation marks omitted)), *aff'd*, 599 F.3d 102 (2d Cir. 2010). *But see Nautilus Neurosciences, Inc. v. Fares*, No. 13 Civ. 1078, 2013 WL 3009488, at *1, (S.D.N.Y. June 14, 2013) (requiring that the two cases be "virtually identical").

Where two actions do constitute competing lawsuits, exceptions to the doctrine's application are few and limited. The Second Circuit has

"recognized only two exceptions to the first-filed rule: (1) where the 'balance of convenience' favors the second-filed action . . . , and (2) where 'special circumstances' warrant giving priority to the second suit." *Employers Ins. of Wausau v. Fox Entm't Grp.*, 522 F.3d 271, 275 (2d Cir. 2008).

In analyzing the "balance of convenience" exception, courts consider the same factors as form the analysis of a motion to transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice," pursuant to 28 U.S.C. § 1404(a). *See Employers Ins. of Wausau*, 522 F.3d at 275. The operative factors include the following:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*Gottdiener*, 462 F.3d at 106-07 (quotation marks and alteration omitted); *see Cook v. UBS Fin. Svcs., Inc.*, No. 05 Civ. 8842, 2006 WL 760284, at *6 (S.D.N.Y. Mar. 21, 2006).

The "special circumstances" exception is utilized extremely rarely. In the Second Circuit, courts have found such special circumstances where the first-filed action is an "improper anticipatory declaratory judgment action" or where the first-filing plaintiff was engaging exclusively in forum shopping. *Employers Ins. of Wausau*, 522 F.3d at 275-76. The latter circumstance requires far more than evidence of forum shopping alone; instead, "the ties between the litigation and the first forum must be so tenuous or de minimis that a full 'balance of convenience' analysis would not be necessary to determine that the second forum is more appropriate than the first." *Id.*

III. DISCUSSION

## A. The first-filed rule applies, because Cestra and Boise's lawsuits substantially overlap.

The parties in this action disagree about whether the similarities between the Cestra and Boise lawsuits are sufficient to trigger the first-filed rule. Both relator Cestra and defendant Cephalon note that the two lawsuits overlap in significant respects but do not overlap perfectly. In Cestra's view, the first-filed rule applies due to this "substantial (though not complete) overlap." (Cestra Mem. at 6.) Meanwhile, Cephalon contends that the first-filed rule does not apply, because "the Cestra and Boise complaints are not 'virtually the same,'" despite their areas of overlap. (Mem. in Opp. to Relator's Mot. to Transfer, Dkt. No. 71 ("Def.'s Mem.") at 4.) The two actions share significant factual allegations, legal issues, and parties. This Court concludes that the two actions are competing lawsuits subject to the first-filed rule, despite the presence of non-overlapping claims.

The first-filed rule is relevant only "where there are two competing lawsuits." *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112. Whether two actions represent competing lawsuits is a matter of the district court's discretion. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000); *Byron v. Genovese Drug Stores, Inc.*, No. 10 Cv. 3313, 2011 WL 4962499, at *3, (E.D.N.Y. Oct. 14, 2011).

The first-filed rule aims to prevent "duplicative litigation." *Employers Ins. of Wausau*, 522 F.3d at 275. More specifically, the principle underlying the rule promotes "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation . . . ." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). Courts are not the only beneficiaries of the first-filed rule: it also ensures that parties remain "free from the vexation of concurrent litigation over the same subject matter." *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991)

(quoting *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 46 (2d Cir. 1961)). Yet another purpose of the doctrine involves "considerations of comity" that militate against multiple district courts simultaneously entertaining competing lawsuits. *Byron*, 2011 WL 4962499, at *2.

The policy goals of the first-filed rule inform the analysis of the degree of similarity that is necessary for two actions to be considered competing lawsuits. An overly formalistic approach to that inquiry would undercut the conservation of judicial resources and the efficient disposition of litigation. Lawsuits that feature both overlapping and non-overlapping claims cannot be inherently disqualified from the first-filed rule, or else redundancy would abound and litigants could evade transfer by adding a non-duplicative claim to their pleadings.

Although "[t]he classic context for applying the rule is where mirror-image lawsuits between the same parties are filed in different venues," *Bukhari v. Deloitte & Touche LLP*, No. 12 Civ. 4290, 2012 WL 5904815, at *3, (S.D.N.Y. Nov. 26, 2012), limiting the rule to that context would disserve judicial economy by promoting litigation that is substantially duplicative but formally discrepant. Similarly, where two actions substantially overlap but feature at least one non-overlapping claim, a failure to apply the first-filed rule would burden the parties with the vexation of simultaneously litigating substantially similar actions.

Judge Arthur D. Spatt in the Eastern District of New York reached a similar conclusion in *Wyler-Wittenberg v. MetLife Home Loans, Inc.* That case presented the question of whether the first-filed rule applied to three actions (one pending before Judge Spatt and two others pending in federal court elsewhere) involving claims under the Fair Labor Standards Act. *See* 899 F. Supp. 2d at 245. The actions shared significant claims: "all three actions [allege] unpaid wages and overtime compensation against MetLife." *Id.* Yet they also were distinct in several ways: the action before the court alleged state law claims that did not overlap with the other actions; each action featured distinct plaintiffs; and the later-filed action

before the district court stood alone in further claiming failure to pay minimum wages. *See id.* at 245-46. Despite the non-overlapping claims and parties, the court determined that the similarities between the actions sufficed to make them competing lawsuits and therefore trigger the first-filed rule. *Id.* at 246. The decision in *Wyler-Wittenberg,* along with other, similar district court decisions, led another district court judge to describe the competing lawsuits analysis as a question of "whether there are common violations of law alleged." *Bukhari,* 2012 WL 5904815, at *4.

Comparing Cestra and Boise's allegations, common violations of law are immediately apparent. The claims relating to Fentora in each complaint describe essentially the same scheme. Both relators allege that off-label promotion of Fentora by Cephalon led to false claims made to governmental entities. (*Compare* Cestra SAC ¶¶ 8-13, *with* Boise AC ¶¶ 2-4, 103.) Both complaints allege the same method for off-label promotion: the marketing of Fentora to physicians who treat general pain and who are unlikely to treat breakthrough cancer pain. (*Compare* Cestra SAC ¶¶ 10, 262, 291, 301-303, *with* Boise AC ¶¶ 2-4, 82-84.) Both allege that Cephalon's improper Fentora promotion included financial inducements to the prescribing doctors. (*Compare* Cestra SAC ¶¶ 340, 375-377, *with* Boise AC ¶¶ 3-4.) Both allege that physicians actually wrote prescriptions for off-label uses of Fentora as a consequence of Cephalon's inducements. (*Compare* Cestra SAC ¶ 378, *with* Boise AC ¶¶ 3-4, 9.) Even the role of Actiq—another opioid marketed by Cephalon, and the subject of prior litigation for off-label promotion—is the same in the Cestra and Boise complaints: both allege that Cephalon attempted to "convert" Actiq-prescribing physicians into Fentora-prescribing physicians. (*Compare* Cestra SAC ¶¶ 12, 319, *with* Boise AC ¶¶ 79, 84.)

The two actions also feature substantially overlapping parties. The sole named defendant in Cestra's lawsuit—Cephalon—is the only defendant against whom Boise asserts his Fentora claims. Although a different relator brought each of these *qui tam* actions, Cestra and Boise

9

brought the actions on behalf of the federal and various state governments. The government "remains the real party in interest in *qui tam* actions . . . , [so] the case, albeit controlled and litigated by the relator, is not the relator's own case . . . nor one in which he has an interest personal to him." *United States* ex rel. *Mergent Svcs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) (internal quotation marks and citations omitted). Cestra has sued on behalf of the United States as well as twenty-eight states and the District of Columbia. Boise has sued on behalf of the United States as well as all fifty states and the District of Columbia. Thus, the parties in interest in the Cestra lawsuit constitute a substantial subset of the parties in interest in the Boise lawsuit.

These similarities between the Cestra and Boise actions do not, however, change the fact that each action does contain non-overlapping claims. In this action, Cestra alleges off-label promotion of Treanda, a drug that is not at issue in the Boise litigation. Meanwhile, Boise's claims involve three other drugs not at issue in this litigation.

Manifestly, the two lawsuits share significant allegations but not all allegations. The common ground is substantial. Cestra recites essentially the same Fentora-related allegations as Boise does, against the same defendant, and on behalf of a large subset of the states Boise purports to represent. The similarities between these actions have even prompted Cephalon to move to dismiss Cestra's Fentora claims as duplicative of Boise's Fentora claims. (*See* Dkt. No. 69.) In litigating that motion, the parties have called upon the Court to assess certain substantive issues concerning Boise's action, including whether Boise adequately alleges the elements of a claim under Section 3729(a)(1)(B) of the FCA and whether Boise specifically alleges payment of kickbacks to induce off-label Fentora prescriptions. (*See* Pf.-Relator's Opp. to Def.'s Mot. to Dismiss the SAC for Lack of Subject Matter Jurisdiction, Dkt. No. 78, filed Oct. 15, 2013, at 3-4; Reply Mem. of Law in Further Support of Cephalon's Mot. to Dismiss SAC for Lack of Subject Matter Jurisdiction, Dkt. No. 80, filed Oct. 25, 2013, at

3.) Thus, even at the motion to dismiss stage, these two actions' concurrent litigation in different district courts has already presented redundancies that contravene the interests of judicial economy and implicate issues of comity.

The non-Fentora claims do not alter the conclusion that the lawsuits are substantially similar. If the lawsuits were to proceed separately, two district courts would be working to shepherd parallel litigation, overseeing analogous discovery, and considering essentially the same factual and legal disputes. This duplicative adjudication in the courts would also impose a duplicative burden on Cephalon in requiring it to defend a substantially similar action in two venues simultaneously. The lawsuits are therefore competing, and the first-filed rule applies, unless either of the two exceptions to that rule are operative here.

### B. The exceptions to the first-filed rule do not apply.

As noted above, there are two exceptions to the first-filed rule: first, where "balance of convenience" suggests that the venue of the later-filed action is preferable, and second, where "special circumstances" are present. *Employers Ins. of Wausau*, 522 F.3d at 275. Neither exception applies here.

First, the balance of convenience weighs heavily in favor of transfer. It is undisputed that substantial evidence is located in the Eastern District of Pennsylvania, that the bulk of the precipitating conduct occurred there, and that Cephalon's principal place of business is located there. Rather than dispute these facts, Cephalon seeks to minimize them by pointing to other undisputed facts; namely, that the Eastern District of Pennsylvania and the Southern District of New York are "a short train ride" apart (Def.'s Mem. at 4) and that it was Cestra's choice to commence this action in the Southern District of New York. However, these points pale in comparison to the significant factors supporting the convenience of the Eastern District

11

of Pennsylvania. The Eastern District of Pennsylvania is decidedly the more convenient forum for the litigation of this lawsuit.

Second, there are no special circumstances at play. Although Cephalon contends that Cestra's motion to transfer is constitutes forum shopping, even if that were true, Cephalon would have to show much more than mere forum shopping in order to demonstrate special circumstances. For evidence of forum shopping to support a finding of special circumstances, "the ties between the litigation and the first forum must be . . . tenuous or de minimis." *Employers Ins. of Wausau*, 522 F.3d at 275-76. In this case, strong ties connect this litigation to the Eastern District of Pennsylvania, where Cestra alleges that core evidence is located, operative facts took places, and defendant is located.

## IV. CONCLUSION

This action properly belongs in the Eastern District of Pennsylvania. It was filed after the Boise action was filed in the Eastern District of Pennsylvania and it overlaps substantially with the claims and parties in the Eastern District of Pennsylvania action. Transfer to the Eastern District of Pennsylvania will prevent duplicative adjudication in the courts, will protect the parties from duplicative litigation, and will place this action in the forum where its litigation will be most convenient.

Accordingly, it is hereby ORDERED that:

1. Relator Cestra's Motion to Transfer is granted. The Clerk of Court is directed to transfer this action to the U.S. District Court for the Eastern District of Pennsylvania.

2. All outstanding deadlines and motions in this action shall be held in abeyance until the transferee court orders otherwise.

3. Relator Cestra shall serve copies of this Order upon the parties to this action. (*See* Dkt. No. 17 ¶ 5.)

Dated: New York, New York
March 19, 2014

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.